# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| Edmond Dixon, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>Lyons Magnus, LLC; Tru Aseptics, LLC<br><br>     Defendants. | Civil Action No. 2:22-cv-04039<br>The Honorable Bruce Howe Hendricks |

## LYONS MAGNUS, LLC AND TRU ASEPTICS, LLC'S MOTION TO DISMISS, OR ALTERNATIVELY TRANSFER VENUE

Defendants TRU Aseptics, LLC and Lyons Magnus, LLC ("Defendants"), by counsel, and for their response to Plaintiff's Complaint and Amended Complaint, move to dismiss this cause of action for lack of standing, failure to state a claim upon which relief can be granted, and/or lack of personal jurisdiction; or, in the alternative, move to transfer venue to the United States District Court for the Western District of Wisconsin.[1]

   I.   Plaintiff Edmond Dixon lacks standing to bring this lawsuit, either individually, or as a class representative, for failure to sufficiently assert injury-in-fact, traceability/causation, and redressability as mandated by Article III, Section 2 of the United States Constitution.

   II.   Further, Plaintiff's Complaint fails to assert a claim upon which relief can be granted under any legal theory recognized by this Court. Though Plaintiff's Complaint seeks recovery and class certification under seven theories of liability, each theory is insufficiently pled and fails to give

---

[1] Defendants' dispositive motion is exempt from the Local Civ. Rule 7.02 (D.S.C.) pre-filing duty to consult.

rise to a legal claim. In sum:

1. Express Warranty - Plaintiff's Complaint fails to identify the particular affirmation or promise that Defendants reportedly breached, and does not identify or plead damages caused by the breach.

2. Implied Warranty of Merchantability - Plaintiff's Complaint fails to allege facts indicating that the goods he received were not merchantable and or plead an available remedy.

3. Fraudulent Misrepresentation and Fraud by Concealment/Omission - Plaintiff's Complaint fails to plead, with requisite specificity, the circumstances constituting fraud pursuant to Fed. R. Civ. P. 9(b).

4. Unjust Enrichment - Plaintiff's Complaint fails to identify the particular benefit conferred on either of the Defendants, the realization of such a benefit, or the inequity of retaining benefits, in the abstract, in light of an available refund.

5. South Carolina Unfair Trade Practices Act - The text of the South Carolina Unfair Trade Practices Act expressly prohibits the pursuit of class action claims.

III. Plaintiff's Complaint fails to state a claim for injunctive relief or punitive damages, and such components of the Complaint should be dismissed.

IV. The allegations of Plaintiff's Complaint are insufficient to establish personal jurisdiction over Defendants.

V. Alternatively, Venue is improperly laid in the U.S. District Court of South Carolina and should be transferred to the U.S. District Court for the Western District of Wisconsin.

### STATEMENT OF FACTS & PROCEDURE

Defendants proactively and voluntarily issued a recall of nutritional and beverage products in July 2022, when routine quality/safety testing revealed that some of its products, including

certain "Premier Protein" branded drinks, could have been contaminated with the bacteria *Cronobacter sakazakii*.

Defendants are not the sole manufacturers or distributors of Premier Protein drinks, nor are Defendants responsible for marketing, advertising, labeling, distributing, selling, or vending Premier Protein products.

The recall information was published on the U.S. Food and Drug Administration's government website.[2] As part of the voluntary recall, consumers were offered a full refund for the purchase of a product subject to the recall.[3]

In response to this measure taken by Defendants to ensure the quality and safety of their products, plaintiff Edmond Dixon initiated this putative class action in the United States District Court of South Carolina on November 11, 2022.[4] Around the same time, six almost-identical proposed class claims were filed in California, New York, Illinois, and North Carolina.[5]

Plaintiff here alleges that he "is a long time Premier Protein drinker" and regularly drinks both chocolate and vanilla flavored Premier Protein drinks.[6] Plaintiff does not plead that he purchased or ingested a product subject to Defendants' recall, or that any product he ingested was contaminated with the bacteria *Cronobacter Sakazakii*.

---

[2] *See* https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/lyons-magnus-voluntarily-recalls-53-nutritional-and-beverage-products-due-potential-microbial
[3] *Id*.
[4] *See* Compl., Dkt. No. 1; see also Am. Compl., Dkt. No. 5.
[5] *Speaks v. Lyons Magnus, LLC, TRU Aseptics*, Case No. 1:22-cv-01043, Middle Dist. North Carolina; *Deringer v. Lyons Magnus, Inc.*, Case No. 1:22-cv-00968-JLT-SAB, Eastern Dist. California; *Sinico v. Lyons Magnus LLC and TRU Aseptics LLC*, Case No. 1:22-cv-01479, Eastern Dist. California; *Nakanishi v. Lyons Magnus LLC and TRU Aseptics LLC*, Case No. 1:22-cv-6899, Northern Dist. Illinois; *Pereyra v. Lyons Magnus LLC and TRU Aseptics LLC*, Case No. 1:22-cv-06622, Northern Dist. Illinois; *Catalano v. Lyons Magnus LLC and TRU Aseptics LLC*, Case No. 7:22-cv-06867, Southern Dist. New York.
[6] Am. Compl. at ¶ 2.

Further, although Plaintiff vaguely references a stomach infection in his Complaint, Mr. Dixon does not demand relief for any injury or illness as a result of consuming one of Defendants' products.[7]

If the Court interprets the averments of Plaintiff's Complaint as seeking repayment or restitution of the purchase price of products subject to recall, such repayment/restitution has been, and continues to be, redressed by Defendants' offer of a full refund to any customer who purchased a recalled product.

Mr. Dixon's lawsuit is not predicated on his consumption of a contaminated product or injuries sustained by him, as made by clear by the Prayer for Relief in his Complaint, in which Plaintiff omits any claim for damages resulting from injury or illness.[8] Rather, this lawsuit was filed in response to Defendants' voluntary recall without a ripe cause of action in the, often-criticized rush to certify a class and appoint class-counsel.

Plaintiff has failed to plead a redressable injury and thus fundamentally lacks standing to bring this lawsuit. Despite this irreparable deficiency, Plaintiff's Complaint purports to assert claims for breach of express warranty, breach of the implied warranty of merchantability, fraudulent misrepresentation, fraud by omission, unjust enrichment, and violations of the South Carolina Unfair Trades Practices Act ("SCUTPA"). As set forth fully herein, the averments of Plaintiff's Complaint fail to sufficiently assert a claim upon which relief can be granted under any legal theory recognized by this Court.

### STATEMENT OF LAW & ARGUMENT

### I. PLAINTIFF LACKS STANDING TO BRING THIS LAWSUIT UNDER ARTICLE III, SECTION 2 OF THE UNITED STATES CONSTITUTION

---

[7] *Id.*
[8] *See Id.* at 29 (Plaintiff's Prayer for Relief is devoid of any reference to harm for injury or illness).

Plaintiff lacks standing to bring this lawsuit for failure to establish the irreducible constitutional minimum of: injury-in-fact, which is traceable to the challenged conduct of the defendant, and which is likely be redressed by favorable judicial decision.[9]

Article III, § 2 of the United States Constitution restricts federal "judicial power" to the resolution of "cases" and "controversies."[10] "That case or controversy requirement is satisfied only where a plaintiff has standing."[11] Even where a statute gives a party the right to sue to vindicate a right conferred by the statute, a plaintiff must first establish Article III standing to clear "the threshold jurisdictional issue that must be resolved before any federal court can reach the merits of a plaintiff's claim."[12]

Absent affirmative proof of Plaintiff's standing, this Court lacks subject matter jurisdiction and must dismiss the case.[13] Constitutional standing is independent of statutory standing and "[a] plaintiff invoking federal jurisdiction bears the burden of establishing the 'irreducible constitutional minimum' of standing" set forth *supra*.[14]

1. Injury-in-Fact

To satisfy the first component of the Article III standing, the Plaintiff must plead an injury-in-fact that is concrete and particularized, actual or imminent, and not conjectural or hypothetical.[15]

Here, Mr. Dixon makes bare-bones allegations that that he "is a long time Premier Protein drinker" and "regularly drinks both chocolate and vanilla flavored Premier Protein drinks."[16] Mr.

---

[9] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).
[10] U.S. Const. Art. III., § 2.
[11] *Sprint Commc'n Co. v. APCC Serv., Inc.*, 128 S. Ct. 2531, 2535 (2008); *see Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985) ("Standing to sue in any Article III court is, of course, a federal question which does not depend on the party's prior standing in state court.").
[12] *Spokeo*, 578 U.S. at 341 (standing not demonstrated simply because "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right"); *see also Doss v. General Mills*, 816 Fed. Appx. 312 (11th Cir. 2020) (affirming dismissal of a consumer class action due to plaintiff's lack of Article III standing).
[13] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).
[14] *Supra*, Note 9.
[15] *Id.* at 560-61.
[16] Am. Compl. at ¶ 2.

Dixon alleges that he was diagnosed with a stomach infection on or around June 1, 2022, "due to Defendants beverages, upon information and belief."[17]

Mr. Dixon never identifies the exact product he purchased, when or from where he purchased it, and does not assert that he consumed any product subject to Defendants' recall. At no point does Plaintiff sufficiently plead – or even allege – that any product he consumed was contaminated by *Cronobacter Sakazakii*. Most telling, Plaintiff does not demand relief for any injury or illness as a result of consuming one of Defendants' products.

Plaintiff has failed to plead that he purchased any products subject to Defendants' recall or contaminated by *Cronobacter Sakazakii*, and has failed to seek relief for any injury or illness as a result of consuming one of Defendants' products. Mr. Dixon's Complaint, even when considered in the light most favorable to the Plaintiff, alleges conjectural and hypothetical harm, an insufficient injury-in-fact to form the basis of Standing under Article III, § 2 of the United States Constitution.

2. Traceability/Causation

Even if this Court entertains the conjectural and hypothetical harm posited by Mr. Dixon as sufficient injury-in-fact to satisfy Article III standing, Plaintiff has failed to identify and plead in his Complaint the exact product he purchased, when he purchased it, and from where it was purchased. As such, Plaintiff has failed to plead sufficient facts to indicate that his harm is fairly traceable to any conduct of these Defendants, i.e. the second component of Article III standing.

As referenced, Defendants are not the sole manufacturers or distributors of Premier Protein drinks, nor are Defendants responsible for marketing, advertising, labeling, distributing, selling, or vending Premier Protein products. Without knowing the exact products Mr. Dixon purchased,

---

[17] *Id*.

when he purchased them, and from where they were purchased, any harm alleged by Plaintiff cannot be attributed to Defendants, as opposed to another manufacturer of Premier Protein beverages. Further, to the degree certain of Plaintiff's claims are predicated on a product's labeling, advertising, or marketing, such claims are likewise deficient for failure to plead harm that is traceable to the challenged conduct of Defendants, as Defendants are not responsible for marketing, advertising, labeling, distributing, selling, or vending Premier Protein products.

Mr. Dixon's Complaint, even when considered in the light most favorable to the Plaintiff, pleads insufficient facts to indicate that any harm alleged by Plaintiff is traceable to the conduct of these Defendants, as required for Article III standing.

3. Redressability

It follows that absent sufficient allegations of an injury-in-fact traceable to the conduct of these Defendants, there is no controversy for this Court to redress. As mentioned, although Plaintiff vaguely references a stomach infection in his Complaint, he does not request relief from any such injury or illness in his Prayer for Relief.[18]

At most, Plaintiff's Complaint seeks repayment or restitution of the purchase price of products subject to Defendants' recall. Because Plaintiff has failed to plead that he purchased or ingested a product subject to Defendants' recall, such a claim could not be redressed by this Court, even by favorable judicial decision. Moreover, any claim for repayment/restitution is moot and duplicative, as any such claims have been, and continue to be, redressed by Defendants' offer of a full refund to any customer who purchased a recalled product.

A case becomes moot - and therefore no longer a 'Case' or 'Controversy' for purposes of Article III - 'when the issues presented are no longer "live" or the parties lack a legally cognizable

---

[18] *Supra*, Note 8.

interest in the outcome.'"[19] "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'"[20]

Plaintiff lacks standing to bring this lawsuit for failure to establish the irreducible constitutional minimum of: injury-in-fact, which is traceable to the challenged conduct of the defendant, and which is likely be redressed by favorable judicial decision.[21] Absent affirmative proof of Plaintiff's standing, this Court lacks subject matter jurisdiction and must dismiss this lawsuit.[22]

## II. PLAINTIFF'S COMPLAINT FAILS TO ASSERT A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER ANY LEGAL THEORY RECOGNIZED BY THIS COURT

Despite Plaintiff's lack of fundamental standing to bring this lawsuit, either individually or as a class representative, Plaintiff's Complaint purports to assert claims for breach of express warranty, breach of the implied warranty of merchantability, fraudulent misrepresentation, fraud by omission, unjust enrichment, and for violations of the South Carolina Unfair Trades Practices Act ("SCUTPA"). The averments of Plaintiff's Complaint fail to sufficiently plead facts giving rise to a cause of action under any of these legal theories.

Fed. R. Civ. P. 12(b)(6) "permits the dismissal of an action if the complaint fails 'to state a claim upon which relief can be granted.'[23] To survive a motion to dismiss, the complaint must provide "enough facts to state a claim to relief that is plausible on its face."[24] Plausibility requires that the complaint show more than a "sheer possibility that a defendant has acted

---

[19] *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (*per curiam*) (some internal quotation marks omitted).
[20] *Alt. v. United States EPA*, 2013 U.S. Dist. LEXIS 65093 (4th Cir. 2013) (citing *Alvarez v. Smith*, 558 U.S. 87 (2009); and *Murphy*, 455 U.S. at 726-27 (1982)).
[21] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, 136 S. Ct. 1540, 1543 (2016).
[22] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).
[23] Fed. R. Civ. P. 12(b)(6).
[24] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)

unlawfully."[25] Such a pleading requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[26] "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."[27]

While this Court must construe the pleadings in the light most favorable to the Plaintiff, it need not accept as true allegations that are no more than legal conclusions or the "formulaic recitation of the elements" of a cause of action,[28] nor should it "accept as true[,] unwarranted inferences, unreasonable conclusions, or arguments."[29]

1. Express Warranty

To plead a cause of action for breach of express warranty under South Carolina law, Plaintiff must identify (1) the existence of an express warranty, (2) breach of that warranty, and (3) damages proximately caused by the breach.[30]

A. The Existence of an Express Warranty

Plaintiff's Complaint fails to identify the particular affirmation or promise that Defendants reportedly breached, opting instead to make vague references to quality and safety statements made on product "labels, packaging, advertising and statements."[31] Plaintiff's Complaint is devoid of the actual words from any Premier Protein label, packaging, advertising, or marketing that would form the basis of an express warranty.

---

[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[26] *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[27] *Iqbal*, 556 U.S. at 678 (citations and quotations omitted).
[28] *Id.* at 678-79.
[29] *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).
[30] S.C. Code § 36-2-313; *see Bell v. Harrington Mfg. Co.*, 265 S.C. 468 (1975); *W. R. Grace & Co. v. LaMunion*, 245 S.C. 1, (1964).
[31] Am. Compl. at ¶¶ 23, 38, 39, 40, 45.

Likewise, Plaintiff has failed to plead that any of the quality and safety statements allegedly provided on/in Defendants' product labels, packaging, advertising, and statements make any representation concerning *Cronobacter Sakazakii,* or that the product would be free of conceivable contaminants.

### B. Breach of an Express Warranty & Resulting Damages

Even if the averments of Plaintiff's Complaint sufficiently identify an express warranty, Plaintiff has failed to plead the facts necessary to suggest that Defendants breached any such warranty made to Mr. Dixon, or that Mr. Dixon suffered actual damages as a result.

Of course, without the actual words of the purported express warranty, it is difficult to fully address, but Plaintiff has failed to plead that the products he purchased were subject to Defendants' recall or contaminated by *Cronobacter Sakazakii,* and has failed to seek relief for any injury or illness as a result of consuming one of Defendants' products, without which, Mr. Dixon cannot maintain that Defendants breached any warranty made to him concerning the quality and safety of its products.

### C. Warranties Attributable to Defendants

Further complicating things for Plaintiff, none of the Premier Protein label content, marketing, advertising, written literature, website content, sales, or retention of benefits of sales of Premier Protein are the responsibility of, or accrue to these Defendants - TRU Aseptics or Lyons Magnus.

Because Plaintiff's Complaint fails to sufficiently identify the particular affirmation or promise that forms the basis of any express warranty, and fails to plead the underlying facts necessary to suggest that Defendants breached an express warranty made to Mr. Dixon, Plaintiff's Complaint fails to state a claim for breach of express warranty upon which relief can be granted, and as such, should be dismissed.

## 2. Implied Warranty of Merchantability

To plead a cause of action for breach of the implied warranty of merchantability pursuant to S.C. Code § 36-2-314, Plaintiff must allege that the goods he received were not merchantable.[32] To do so, he must plead facts indicating that the goods, *inter alia*: were not of fair average quality; were not fit for their ordinary purpose (of consumption); and were not adequately contained, packaged, or labeled.[33] Likewise, Plaintiff must plead facts indicating that Defendants' breach of such warranty resulted in damages.[34]

Aside from Plaintiff's recitation of the elements of this cause of action, Mr. Dixon has failed to offer any contention or state any fact indicating that the Premier Protein-branded shakes that he consumed were of a quality that was not merchantable; or that his consumption of such product resulted in damages to him. Plaintiff does not allege that the products he purchased were subject to Defendants' recall or contaminated by *Cronobacter Sakazakii,* and has failed to seek relief for any injury or illness as a result of consuming one of Defendants' products.

Plaintiff's Complaint fails to plead facts indicating that that the Premier Protein-branded shakes that he purportedly consumed were not merchantable, and has failed to plead actual damages. Any claim for repayment/restitution is moot and duplicative, as any such claims have been, and continue to be, redressed by Defendants' offer of a full refund to any customer who purchased a recalled product. As such, Plaintiff's Complaint fails to state a claim for breach of the implied warranty of merchantability and should be dismissed.

---

[32] S.C. Code § 36-2-314
[33] *Id.*
[34] *See Doty v. Parkway Homes Co.,* 295 S.C. 368 (1988).

11

### 3. Fraudulent Misrepresentation and Fraud by Omission/Concealment

Plaintiff's Complaint fails to plead, with requisite specificity, the circumstances constituting fraud pursuant to Fed. R. Civ. P. 9(b) in support of his claims for fraudulent misrepresentation and fraud by omission.

Fed. R. Civ. P. 9(b) provides that "a party must state with particularity the circumstances constituting fraud."[35] To adequately state a cause of action for fraud under South Carolina law, a plaintiff must allege with specificity the following elements: (1) a representation (or omission); (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury."[36] The pleading must also include the time, place, contents of the misrepresentation, the identity of the person making the misrepresentation, and what the person gained by the misrepresentation.[37] "A complaint which fails to specifically allege the time, place and nature of the fraud is subject to dismissal on a Rule 12(b)(6) motion."[38] Finally, "[g]eneral allegations that fail to identify a specific individual's specific conduct or statements do not fulfill the heightened particularity standard for pleading fraud under Rule 9(b)."[39]

### A. Fraudulent Misrepresentation

In the instant matter, Plaintiff offers only a bare allegation that the "Defendants expressly represented and warranted that Recalled Products were health, health promoting, and safe for

---

[35] Fed. R. Civ. P 9(b).

[36] *See Regions Bank v. Schmauch*, 354 S.C. 648, 582 S.E.2d 432, 444 (D.S.C. 2003); *Belvin v. Sedgewood Manor Health Care Ctr., LLC*, 2022 U.S. Dist. LEXIS 50895 (D.S.C. 2022).

[37] *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

[38] *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 980 (4th Cir. 1990); *see also Brown v. Stewart*, 348 S.C. 33, 557 S.E.2d 676, 680 (S.C. Ct. App. 2001).

[39] *See Arnlund v. Smith*, 210 F. Supp. 2d 755, 760 (E.D. Va. 2002) (quoting *Apple v. Prudential-Bache Sec., Inc.*, 820 F. Supp. 984, 987 (W.D.N.C.), *aff'd sub. nom.* 993 F.2d 228, 1993 WL 138523 (4th Cir. 1993)) (A plaintiff must identify, with particularity, each individual defendant's culpable conduct; defendants cannot be grouped "together without specification of which defendant committed which wrong.").

consumption by humans, especially physically vulnerable persons or those seeking a nutritional supplement."[40]

Foundationally, Plaintiff has failed to plead sufficient facts to support his contention that this alleged representation was, indeed, false or misleading; nor has he sufficiently pled facts to suggest that Defendants knew or recklessly disregarded the falsity of any such representation. As explained *supra*, Plaintiff does not allege that the products he consumed were subject to Defendants' recall or contaminated by *Cronobacter Sakazakii,* and Plaintiff has failed to seek relief for any injury or illness as a result of consuming one of Defendants' products. Aside from his nonspecific restatement of the elements of fraud, Plaintiff makes no attempt to offer any fact to suggest that Defendants were aware of a risk of contamination or that defendants were reckless in making representations concerning product quality.

Further, Plaintiff's Complaint fails to identify which of the named Defendants or their representatives made the alleged representation, and fails to state a time or place that the representation was made.[41] As the Court opined in *Belvin v. Sedgewood Manor Health Care Center, LLC*, "[w]ithout a specific misrepresentation made at a specific time and place that Defendants knew was false at the time it was made, Plaintiff's claim merely amounts to a breach of contract claim or an establishment of a duty owed rather than a fraudulent misrepresentation."[42]

Finally, Plaintiff has failed to plead with specificity whether and how Mr. Dixon actually relied on Defendants' representations. Plaintiff's Complaint alleges nakedly that "Plaintiff and the Class did in fact rely on these misrepresentations" in purchasing Defendants products.[43] The United States Court of Appeals for the Fourth Circuit has previously held "[r]easonable,

---

[40] *Am. Compl* at ¶ 60.
[41] *See id.* at ¶¶ 58-62.
[42] *Belvin v. Sedgewood Manor Health Care Center, LLC*, 2022 U.S. Dist. LEXIS 50895 (D.S.C. 2022).
[43] Am. Compl. at ¶ 63.

detrimental reliance upon a misrepresentation is an essential element of a cause of action for fraud . . . and such reliance must be pleaded with particularity."[44] "Thus, merely stating the alleged representations would theoretically lead an individual to believe those representations or that the individual had a right to rely on the alleged representations does not fulfill the particularity requirement of pleading fraud . . . [p]laintiff must allege how and whether [the plaintiff *actually* relied upon the alleged representation to adequately state a claim."[45]

As such, Plaintiff's Complaint fails to state a claim for fraudulent misrepresentation and should be dismissed.

### B. Fraudulent Omission/Concealment

As with Plaintiff's claim of fraudulent misrepresentation, Plaintiff must plead his claim for fraudulent omission with sufficient particularity to satisfy Fed. R. Civ. P. 9(b); and like his claim for fraudulent misrepresentation, Plaintiff fails to plead the circumstances constituting fraud by omission with the requisite specificity.

For the same reasons set forth in the discussion of fraudulent misrepresentation above, Plaintiff has failed to plead sufficient facts to indicate that Defendants were aware of and withheld knowledge of a risk of contamination or any other material fact from Mr. Dixon, or consumers generally. Further, in South Carolina, "[n]ondisclosure is fraudulent when there is a duty to speak."[46] The duty to speak or disclose generally arises in three ways:

> (1) where it arises from a preexisting definite fiduciary relation between the parties; (2) where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in question, or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied; (3) where the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and

---

[44] *Belvin*, 2022 U.S. Dist. Lexis 50895 *9-10 (quoting *Xia Bi v. McAuliffe*, 927 F.3d 177 (4th Cir. 2019) (quoting *Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987)).

[45] *Id.* ("[h]ow and whether a party relied on a misstatement is every bit as much a 'circumstance constituting fraud' as any other element").

[46] *Ardis v. Cox*, 314 S.C. 512, 515 (S.C. Ct. App. 1993).

necessarily calls for perfect good faith and full disclosure without regard to any particular intention of the parties.[47]

In commercial transactions, the South Carolina Supreme Court has held "where material facts are accessible to the vendor only, and he knows them not to be within the reach of the diligent attention, observation and judgment of the purchaser, the vendor is bound to disclose such facts and make them known to the purchaser."[48]

Defendants have no duty to disclose facts of which they are not aware. Here, Plaintiff has not alleged facts demonstrating that Defendant concealed or suppressed any fact from him, let alone concealed or suppressed the fact of the potential contamination with the intent to defraud. To the contrary, on July 29, 2022, Lyons Magnus issued a widely-publicized, nation-wide *voluntary* recall of 53 products that were potentially contaminated.[49] The recall was undertaken as a preventive measure and to inform the public about the potential contamination. The existence of the public recall, which included publication and participation by the Food and Drug Administration, necessarily defeats Plaintiff's conclusory allegations that Defendants engaged in fraud by concealing the potential presence of bacteria in the recalled products.

4. Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must show: "(1) he conferred a non-gratuitous benefit on the defendant; (2) the defendant realized some value from the benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value."[50] In support of his claim of unjust enrichment, Plaintiff's Complaint fails to identify the particular benefit conferred on either of the Defendants, the realization of such a benefit, or the inequity of retaining benefits, in the abstract, in light of an available refund.

---

[47] *Id.* (quoting *Jacobson v. Yaschik*, 249 S.C. 577, 581 (1967)).
[48] *Lawson v. Citizens & S. Nat'l Bank of S.C.*, 259 S.C. 477, 481 (1972).
[49] Am. Compl. at ¶ 17.
[50] *Inglese v. Beal*, 403 S.C. 290, 29 (S.C. Ct. App. 2013).

Plaintiff's Complaint fails to state that Mr. Dixon actually purchased any of Defendants' products, and does not provide the purchase price of any recalled product or otherwise identify the value of any benefit conferred on either of the Defendants by Mr. Dixon. In fact, Plaintiff does not allege that the products he consumed were subject to Defendants' recall or contaminated by *Cronobacter Sakazakii,* and has failed to seek relief for any injury or illness as a result of consuming one of Defendants' products.

Likewise, Plaintiff's Complaint fails to allege the inequity of retaining the purchase price of a product in light of an available refund. Any claim for repayment/restitution is moot and duplicative, as any such claims have been, and continue to be, redressed by Defendants' offer of a full refund to any customer who purchased a recalled product.

5. <u>South Carolina Unfair Trade Practices Act</u>

The text of the South Carolina Unfair Trade Practices Act ("SCUTPA") expressly prohibits the pursuit of class action claims:

> [a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, *but not in a representative capacity*, to recover actual damages.[51]

As concisely summarized in *Fejzulai v. Sam's West, Inc.*, various courts, including the South Carolina Supreme Court, have confirmed that SCUTPA claims cannot be pursued on a representative basis, including on behalf of a putative class.[52] Accordingly, the statutory text and

---

[51] S.C. Code § 39-5-140(a) (emphasis added).

[52] *Fejzulai v. Sam's West, Inc.*, 205 F. Supp. 3d 723, 725 (S.C. 2016) (citing *see, e.g., Gunnells v. Healthplan Servs.*, 348 F.3d 417, 423 (4th Cir. 2003) (affirming by implication the district court's refusal to certify a SCUTPA suit as a class action pursuant to S.C. Code § 39-5-140); *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 634-35 (D.S.C. 2015) (dismissing the plaintiffs' SCUTPA class claims); *In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prod. Liab. Litig.*, No. 3:11-CV-02784-JMC, 2013 U.S. Dist. LEXIS 44137, at *9 (D.S.C. Mar. 27, 2013); *Stalvey v. Am. Bank Holdings, Inc.*, No. 4:13-CV-714, 2013 U.S. Dist. LEXIS 161634, *4 (D.S.C. Nov. 13, 2013); *In re MI Windows & Doors, Inc. Prod. Liab. Litig.*, No. 2:11-CV-00167-DCN, 2012 U.S. Dist. LEXIS 158666, at *5 (D.S.C. Nov. 6, 2012) ("[P]laintiffs cannot bring their SCUTPA claim on behalf of a putative class."); *Harris v. Sand Canyon Corp.*, 274 F.R.D. 556, 565 (D.S.C. 2010) ("It seems clear from the language of SCUTPA that class action suits are

relevant case law dictates dismissal of Plaintiffs' SCUTPA claim to the extent it is pursued in a representative capacity.

As for Mr. Dixon's individual claim under SCUTPA, Plaintiff's Complaint fails to adequately identify the representations or conduct that he contends was unfair or deceptive, and fails to offer any fact to suggest that any of Defendants' conduct had the capacity, effect, or tendency to deceive. As such, Mr. Dixon's individual SCUTPA claim should be dismissed.

To assert a cause of action under SCUTPA, Plaintiff must demonstrate that (1) Defendants engaged in an unlawful trade practice, (2) that he suffered actual, ascertainable damages as a result of Defendants' use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by Defendants had an adverse impact on the public interest."[53] As the Fourth Circuit Court of Appels has explained, the conduct giving rise to a claim under SCUTPA must have "the capacity or effect or tendency to deceive."[54] "The plaintiff need not show intentional deception, but a plaintiff cannot prevail without showing at least a potential of deception."[55] Conduct rising to the level of "negligence or incompetence alone is insufficient to establish an unfair or deceptive practice sufficient to support a claim under SCUTPA.[56]

Plaintiff's Complaint fails to identify the particular representation or conduct attributable to each of the Defendants that he contends was unfair or deceptive, opting instead to make vague conclusory references to "representations, misleading statements, and omissions with respect to

---

forbidden under the Act, and the South Carolina Supreme Court has held as such."); *Harris v. Option One Mortgage Corp.*, 261 F.R.D. 98, 111 (D.S.C. 2009) ("It seems clear from the language of SCUTPA that class action suits are forbidden under the Act, and the Fourth Circuit has acknowledged this rule in [*Gunnells*]."); *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 383 S.C. 115, 678 S.E.2d 430, 434 (S.C. 2009) ("[B]ecause SCUTPA claims may not be maintained in a class action lawsuit, the trial court properly dismissed Appellant's claim.")).
[53] *Havird Oil Co. v. Marathon Oil Co.,* 149 F.3d 283, 291 (4th Cir. 1998); *see* S.C. Code § 39-5-140; S.C. Code § 39-5-20.
[54] *Clarkson v. Orkin Exterminating Co.*, 761 F.2d 189 (4th Cir. 1985) (citing *State Ex Rel. McLeod v. C & L Corp., Inc.*, 280 S.C. 519 (1984)).
[55] *Id.*
[56] Simmons v. Danhauer & Assocs. LLC, 477 Fed. Appx. 53, 55 (4th Cir. 2012) (citing *Clarkson,* 761 F.2d at 190-91; *Wright v. Craft*, 372 S.C. 1 (S.C. Ct. App. 2006)).

the inclusion of unsafe levels of Bacteria in the Recalled Products."[57] Plaintiff's Complaint is devoid of the actual words, statements, or representations that he contends were deceptive, and fails to identify or plead pre-production knowledge of contamination or other conduct that would give rise to a clam under SCUTPA.

Further, Plaintiff has failed to offer any fact to suggest that Defendants' conduct had the capacity, effect, or tendency to deceive. Plaintiff's Complaint describes conduct more indicative of a mistake or error, and is insufficient to establish an unfair or deceptive practice.[58]

### III. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR INJUNCTIVE RELIEF OR PUNITIVE DAMAGES, AND SUCH COMPONENTS OF THE COMPLAINT SHOULD BE DISMISSED.

A preliminary injunction arises from Federal Rule of Civil Procedure 65, but "is an extraordinary remedy never awarded as of right."[59] To obtain a preliminary injunction, Plaintiffs must establish all four of the following elements: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest.[60]

First, "plaintiffs seeking preliminary injunctions must demonstrate that they are likely to succeed on the merits."[61] This inquiry "requires plaintiffs seeking injunctions to make a 'clear showing' that they are likely to succeed at trial[.]"[62] Second, the party requesting injunctive relief must demonstrate that it is likely to suffer irreparable harm absent the preliminary injunction.[63] The harm to be prevented must be of an immediate nature and not simply

---

[57] Am. Compl. at ¶¶ 84-87.

[58] Simmons v. Danhauer & Assocs. LLC, 477 Fed. Appx. 53, 55 (4th Cir. 2012) (citing *Clarkson,* 761 F.2d at 190-91; *Wright v. Craft,* 372 S.C. 1 (S.C. Ct. App. 2006)).

[59] *Winter v. NRDC, Inc.,* 555 U.S. 7, 24, (2008).

[60] *Id.*; *Real Truth About Obama, Inc. v. FEC,* 575 F.3d 342, 346-47 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010).

[61] *Pashby v. Delia,* 709 F.3d 307, 320 (4th Cir. 2013) (citing *Winter*, 555 U.S. at 20).

[62] *Id.* (citing 11A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2948.3 (2d ed. 1995)).

[63] *Winter*, 555 U.S. at 22-23.

a remote possibility.[64]  The third and fourth elements of the preliminary injunction test require Plaintiffs to clearly establish that the balance of equities tips in their favor and that an injunction is in the public interest.[65] As the Fourth Circuit has explained: "[e]ven if plaintiffs are likely to suffer irreparable harm in the absence of a preliminary injunction, we still must determine that the balance of the equities tips in their favor, 'pay[ing] particular regard for the public consequences in employing the extraordinary remedy of injunction.'"[66]

Here, Plaintiff acknowledges and concedes that Defendants have already recalled product that might have been contaminated.[67]  Working cooperatively with the FDA, Defendants voluntarily instituted a recall and refund for any consumer who purchased a recalled product. This recall program is still in effect and relief in the form of a refund remains available, therefore there is no "continuing, present adverse effect" on the Plaintiff or the products. There is no allegation that Defendants continue to manufacture the same products that were subject to recall, and existing potentially contaminated product has been recalled. Because the potential contamination problem has been addressed, Plaintiff has not and cannot maintain a claim for injunctive relief.

The allegations of the Complaint fail to state a claim that would authorize or entitle Plaintiff to recover punitive or exemplary damages. Namely, Plaintiffs' Complaint fails to allege facts indicative or suggestive of willful, wanton, or reckless conduct on behalf of the Defendants, pursuant to S.C. Code § 15-32-510, *et seq.*

---

[64] *Am. Whitewater v. Tidwell*, No. 8:09-cv-02665-JMC, 2010 U.S. Dist. LEXIS 127306 at *11 (D.S.C. Dec. 2, 2010) (citing *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003)).
[65] *Winter*, 555 U.S. at 20.
[66] *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).
[67] Am. Compl. at ¶ 17.

**IV. THE ALLEGATIONS OF PLAINTIFF'S COMPLAINT ARE INSUFFICIENT TO ESTABLISH PERSONAL JURISDICTION OVER DEFENDANTS.**

In his Complaint, Mr. Dixon contends that the courts of South Carolina may exercise personal jurisdiction over Defendants to consider his claims because Defendants regularly conduct business in South Carolina, and because "the injury and dispute both occurred within the jurisdiction."[68] These allegations, and the whole of Plaintiff's Complaint, without more, are insufficient to permit a Court of this state to exercise personal jurisdiction over Plaintiff's claims. Plaintiff bears the burden of pleading and later establishing, personal jurisdiction.[69] When a plaintiff fails to meet this burden, S.C. R. Civ. P. 12(b)(2) provides that a defendant may file a motion challenging the appropriateness of personal jurisdiction as an affirmative defense in response to a civil complaint.[70]

In South Carolina, the appropriateness of personal jurisdiction over a nonresident defendant is tested against both the state's long arm statutes and due process.[71] South Carolina courts have held, however, that because the State's long arm statutes are co-extensive with the due process requirements of both the U.S. and South Carolina Constitutions, the determination of whether personal jurisdiction exists over a foreign corporation hinges exclusively on the due process analysis.[72] "Whether employing the traditional two-step analysis, or following the more recent determination that the analysis is compressed into a due process assessment alone, it is clear

---

[68] Am. Compl. at ¶ 6.

[69] *Power Products and Services Co., Inc. v. Kozma,* 379 S.C. 423, 430 (Ct. App. 2008) (citing *Moosally v. W.W. Norton & Co.,* 358 S.C. 320, 328 (Ct. App. 2004).

[70] S. C. R. Civ. P. § 12(b)(2).

[71] *See Moosally v. W.W. Norton & Co*., 358 S.C. 320, 328-29 (Ct. App. 2004); *see also White v. Stephens,* 300 S.C. 241, 245 (1990) (emphasis added).

[72] *See* S.C. Code §§ 36-2-802 and 36-803*; Moosally,* 358 S.C. at 329; *see also Cockrell v. Hillerich & Bradsby Co.,* 363 S.C. 485, 491 (2005).

that personal jurisdiction over a non-resident defendant may be invoked only if the nonresident's contacts in South Carolina are sufficient to satisfy due process requirements."[73]

Due process operates as a limiting principle to restrict the jurisdiction of state courts to enter judgments that would inappropriately affect the interests of nonresident defendants.[74] Due process is satisfied when a defendant has purposefully established minimum contacts with the forum state, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Such contacts may be either general or specific.[75]

1. Defendants are not *at home* in South Carolina

General, all-purpose personal jurisdiction is proper when a foreign corporation's "affiliations with the forum can be said to be so continuous and systematic as to render it at home in that state."[76] As explained by the Supreme Court of the United States in *Daimler AG v. Bauman*,

> [o]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. 'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.' With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.' Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable.[77]

Defendants are not *at home* in South Carolina.[78] Defendant TRU Aseptics, LLC is a limited liability company organized under the laws of Wisconsin and it maintains its principal place of business in Beloit, Wisconsin. Likewise, defendant Lyons Magnus, LLC is a limited liability company organized under the laws of California with its principal place of business in Fresno,

---

[73] *Power Prods. & Servs. Co. v. Kozma*, 379 S.C. 423, 431 (Ct. App. 2008).

[74] U.S. Const. amend. XIV § 2; S.C. Const. art. I, § 3; see *Cockrell*, 363 S.C. at 491-92.

[75] *See* S.C. Code §§ 36-2-802 and 36-803 (retaining early specific and general personal jurisdiction vernacular; "enduring relationship" and "specific conduct").

[76] *Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 (2014) (emphasis added); *see also BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (2017).

[77] *Daimler, 134 S. Ct. at 761* (*citing Goodyear Dunlop Tire Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011); *Hertz Corp. v. Friend*, 559 U.S. 77 (2010)).

[78] *Id.*

California. Defendants did not choose to incorporate in South Carolina and do not maintain their principal places of business or headquarters in South Carolina, thus they are not *at home* in South Carolina for the purpose of general jurisdiction.

Nor is this the "exceptional case," as enunciated in *Daimler*, in which Defendants' contacts with South Carolina could be considered so constant and pervasive "as to render [it] *essentially at home* in the forum state."[79] By way of general contacts, Plaintiff's Complaint alleges simply that Defendants "regularly and continuously conduct business in the jurisdiction."[80] These contacts, even if taken as true, are wholly inadequate to satisfy the constant and pervasive threshold required of the exceptional general jurisdiction case.

The Supreme Court soundly rejected such generic business contacts as the basis for general personal jurisdiction in *BNSF Ry. Co. v. Tyrrell*, where it borrowed from its precedent explaining that "[a] corporation that operates in many places can scarcely be deemed at home in all of them."[81] The Supreme Court held that that "the general personal jurisdiction inquiry does not focus solely on the magnitude of a defendant's in-state contacts, but calls for an appraisal of the corporation's activities in their entirety."[82] The Court was persuaded that though BNSF had business contacts with the State of Montana, its 2,061 miles of track within the State accounted for only 6% of its total track mileage, and its 2100 Montana employees made up only 5% of its total work force.[83] The Court reasoned that "the business BNSF does in Montana is sufficient to subject the railroad to specific jurisdiction in the State on claims related to the business it does in

---

[79] *Id.* at 751 (quoting *Goodyear*, 131 S. Ct. at 2851 (*emphasis added*)).
[80] Compl. at ¶ 6.
[81] *BNSF Ry. Co.*, 137 S. Ct. at 1559.
[82] *Id.* at 1559 (citing *Daimler*, 134 S. Ct. at 746).
[83] *Id.* at 1554.

Montana . . . but in-state business . . . does not suffice to permit the assertion of general jurisdiction over claims [] that are unrelated to any activity occurring in Montana."[84]

Accordingly, Defendants cannot be said to be *essentially at home* in South Carolina. Defendants' contacts with South Carolina are far less pervasive than the Montana contacts deemed insufficient by the Supreme Court in *BNSF*. Plaintiff does not plead or contend that Defendants have any employees in South Carolina; that it has a manufacturing presence in the State; or that it derives a highly disproportional amount of sales from South Carolina. Plaintiff's Complaint, in essence, asserts only that Defendants "do business" in South Carolina.[85] In fact, neither of the Defendants have any physical offices or warehouses in the State of South Carolina.

2. The claims asserted by Plaintiff do not arise out of or relate to Defendants' contacts with the State of South Carolina.

The exercise of specific, case-linked, personal jurisdiction is appropriate when there is "an affiliation between the forum and the underlying controversy" that would subject a foreign corporation to that state's regulations and laws.[86] The exercise of specific personal jurisdiction requires: (1) that the defendant purposefully avails itself of the privilege of conducting activities in the state, and that the subject cause-of-action *arise out of* or *relate to* those forum activities (power); and (2) that the exercise of jurisdiction over the defendant be fair and reasonable so as not to offend traditional notions of fair play and substantial justice (fairness).[87] The plaintiff bears the burden of satisfying both the power and fairness prongs of the specific jurisdiction analysis.[88]

---

[84] *Id.* at 1559.
[85] *See* Am. Compl. at ¶ 6.
[86] *Bristol-Myers Squibb Co. v. Superior Court of Calif., San Francisco County*, 137 S. Ct. 1773, 1785 (2017).
[87] *Hidria, USA, Inc. v. Delo*, 415 S.C. 533, 541-42 (Ct. App. 2016) (explaining the two prong power and fairness specific personal jurisdiction analysis employed in South Carolina); *see also id.*
[88] *S. Plastics Co. v. S. Commerce Bank*, 310 S.C. 256, 259 (1992).

"If either prong fails, the exercise of personal jurisdiction over the [nonresident] defendant fails to comport with the requirements of due process."[89]

### A. Power (Purposeful Availment & Connection to the Controversy)

Specific personal jurisdiction is characteristically different than general jurisdiction in that it permits the forum to exercise judicial authority over foreign, out-of-state defendants less intimately connected with a state, but does so only in regard to a narrower, case-linked, class of claims.[90]

> The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.' The defendant must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum state. The contacts must be the defendant's own choice and not random, isolated, or fortuitous. They must show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum state or entering a contractual relationship centered there. Yet even then—because the defendant is not 'at home'—the forum state may exercise jurisdiction in only certain cases. The plaintiff's claims must arise out of or relate to the defendant's contacts with the forum. Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum state and is therefore subject to that state's regulation.[91]

"Under the power prong, a minimum contacts analysis requires the court to find that the defendant directed its activities to residents of South Carolina and that the cause of action arises out of or relates to those activities."[92] As explained by the Supreme Court of South Carolina in *Hidria, USA, Inc. v. Delo*, "without minimum contacts, the court does not have the 'power' to

---

[89] *Id.* at 260.
[90] *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024-25.
[91] *Id.* (providing a succinct summary of the Court's specific personal jurisdiction precedent, citing *Bristol-Myers*, 137 S. Ct. 1773; *Daimler*, 134 S. Ct. at 746; *Walden* v. *Fiore*, 571 U. S. 277, 285 (2014); *Burger King Corp.* v. *Rudzewicz*, 471 U. S. 462 (1985); *Keeton* v. *Hustler Magazine, Inc.*, 465 U. S. 770, 774 (1984); *Helicopteros Nacionales de Colombia, S. A.* v. *Hall*, 466 U. S. 408, 414 (1984); *Hanson* v. *Denckla*, 357 U. S. 235, 253 (1958); *Int'l Shoe Co.*, 326 U. S., at 319).
[92] *Hidria, USA*, 415 S.C. at 541-542 (citing *Moosally*, 358 S.C. at 331-332).

adjudicate the action . . . ensur[ing] that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.[93]

Setting aside the conclusory statement that "the injury and dispute both occurred within the jurisdiction," Plaintiff's Complaint fails to offer any facts to indicate that the products he reportedly consumed were subject to Defendants' recall or contaminated by *Cronobacter Sakazakii,* let alone that he purchased on consumed any recalled product in the State of South Carolina. Further, Plaintiff has failed to seek relief for any injury or illness as a result of consuming one of Defendants' products, which may have occurred in South Carolina.

As the U.S. Supreme Court explained in *Goodyear Dunlop Tire Operations, S.A. v. Brown*, "even regularly occurring sales of a product in a state do not justify the exercise of jurisdiction over a claim unrelated to those sales."[94] Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.[95]

Because Plaintiff has failed to plead or establish that Defendants directed activities into the State of South Carolina that give rise to or relate to the claims asserted by Mr. Dixon, the U.S. District Court for the District of South Carolina does not have the personal jurisdiction over this action.

### B. Fairness (Traditional Notions of Fair Play and Substantial Justice)

Under the fairness prong, a defendant's contacts with the forum state must be such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.[96] In considering fairness, South Carolina courts examine such factors as the burden on the defendant, South Carolina's interest, and the several states' interest in substantive social policies.[97]

---

[93] *Id.*
[94] *Goodyear*, 131 S. Ct. at 2846.
[95] *Bristol Myers*, 137 S. Ct. at 1780.
[96] *S. Plastics Co.*, 310 S.C. at 260.
[97] *Moosally*, 358 S.C. at 333.

The relationship between the defendant and the forum must be such that it is reasonable to require it to defend the particular suit which is brought there.[98] From Defendants' perspective, it produced nutritional and beverage products in Beloit, Wisconsin, before proactively and voluntarily issuing a recall of those products, when routine quality/safety testing revealed that some of the products could have been contaminated. Several months later Defendants are haled to South Carolina to defend a lawsuit which fails to plead that the named Plaintiff consumed a product subject to Defendants' recall or contaminated by *Cronobacter Sakazakii,* in the State of South Carolina.

Under these facts, the maintenance of this lawsuit in South Carolina would offend traditional notions of fair play and substantial justice, and therefore the suit fails the fairness prong of specific jurisdiction as well.

As such, Plaintiff has failed to plead or establish sufficient minimum contacts with the state of South Carolina to satisfy due process. Defendants respectfully requests that this Court dismiss Plaintiff's claims against it for lack of personal jurisdiction,

## V. ALTERNATIVELY, VENUE SHOULD BE TRANSFERRED TO THE U.S. DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN

Should this Court conclude that Plaintiff has standing to bring this lawsuit, and that Plaintiff has adequately pled a claim for relief, Defendants request transfer of this cause of action to the U.S. District Court for the Western District of Wisconsin.

Venue is proper: (1) in a judicial district in which any defendant resides, (2) in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," or (3) "in a judicial district in which any defendant is subject to the court's personal jurisdiction" if there is no district in which an action may otherwise be brought.[99] Pursuant to 28 U.S.C. § 1404(a), a district court can transfer

---

[98] *World-Wide Volkswagen Corp. v. Woodson*, 100 S. Ct. 559, 564 (1980).
[99] *See* 28 U.S.C. § 1391(b)(1)-(3).

venue when (1) the transferee court is one where the action might have been brought; and (2) the convenience of the parties and witnesses and the interest of justice favor transfer.[100]

Here, venue is proper in the Western District of Wisconsin as the venue where defendant TRU Aseptics, LLC maintains its headquarters, thus its domicile/residence.[101] Further, Wisconsin, not South Carolina, is the most convenient venue for both parties and witnesses. All of the recalled products were produced in Beloit, Wisconsin. Any contamination that may have occurred happened in Wisconsin, not in South Carolina. Products that were recalled or held for testing are stored in Wisconsin, as well as records, samples, and test results. Cataloging and shipping this evidence to South Carolina would be burdensome and inefficient. Similarly, TRU Aseptics' employees reside and work in proximity to Wisconsin.

As pled, venue over Plaintiff's Complaint is improperly laid in the U.S. District Court for the District of South Carolina, and should be transferred to the U.S. District Court for the Western District of Wisconsin.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, defendants TRU Aseptics, LLC and Lyons Magnus, LLC move to dismiss Plaintiff's Complaint for lack of standing, failure to state a claim upon which relief can be granted, and/or lack of personal jurisdiction; or, in the alternative, move to transfer venue to the United States District Court for the Western District of Wisconsin.

Respectfully Submitted,

*/s/ Houston Bragg*
Houston Bragg (D.S.C. No. 13577)
Dinsmore & Shohl LLP
100 West Main Street, Suite 900
Lexington, KY 40507
(859) 425-1000
houston.bragg@dinsmore.com

*Counsel for Defendants, TRU Aseptics, LLC
and Lyons Magnus, LLC*

---

[100] 28 U.S.C. § 1404(a).
[101] 28 U.S.C. § 1391(b)(1).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 20th day of January, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and served a true and correct copy of the foregoing upon the following, by U.S. Mail:

Blake G. Abbott
Paul J. Doolittle
32 Ann Street
Charleston, SC 29403
Tel: (843) 614-8888
blake@akimlawfirm.com
pauld@akimlawfirm.com

*Counsel for Plaintiff*

*/s/ Houston Bragg*_____
*Counsel for Defendants, TRU Aseptics, LLC and Lyons Magnus, LLC*